UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

FILED
2009 JUL 10 P 4: 29
CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| CBEYOND COMMUNICATIONS, LLC, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 1:09CV766 LMB/JFA |
| ) | |
| v. ) | |
| ) | |
| iCORE NETWORKS, INC.; ) | |
| JARED SEAVERNS; AND ) | |
| MICHAEL BERTAMINI, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff Cbeyond Communications, LLC ("Cbeyond"), by counsel, respectfully submits its Complaint against Defendants iCore Networks, Inc., Jared Seaverns and Michael Bertamini as follows:

## PARTIES

1. Cbeyond is a publicly-traded company based in Atlanta, Georgia and the world's first 100% Voice over Internet Protocol ("VoIP") local phone network. Using VoIP and a 100% Cisco network, Cbeyond delivers to small business customers an integrated package of high quality local and long distance telephony services, high-speed, T-1 Internet access and Internet-based applications for about the same price that small businesses typically pay for local and long distance telephone service alone. Cbeyond works exclusively with this growing entrepreneurial class of customers providing customized packages and unique customer support. Cbeyond believes that by giving its customers the communication tools they need at a value they can afford, that Cbeyond will be the last communications company a small business will ever need.

Cbeyond serves customers in Atlanta, Chicago, Dallas-Ft. Worth, Houston, Denver, Los Angeles, San Diego, Detroit, San Francisco, Miami, Minneapolis, Seattle, and Washington DC.

2. Defendant iCore Networks, Inc. ("iCore") is a for-profit corporation organized under the laws of the State of Delaware with its principal place of business at 7929 Jones Branch Drive, McLean, Virginia 22102, within this judicial district. iCore was established in 2001 and provides managed telephony services, through its VoIP systems, to small and mid-sized businesses.

3. Cbeyond and iCore are competitors.

4. Defendant Jared Seaverns is a resident, domiciliary and citizen of the Commonwealth of Virginia and resides at 13954 Mansarde Road, Apt. 172, Herndon, Virginia 20171, within this judicial district. Seaverns is a former employee of Cbeyond and a current employee or agent of iCore.

5. Defendant Michael Bertamini is a resident, domiciliary and citizen of the Commonwealth of Virginia and, upon information and belief, resides at 3333 Dondis Creek Drive, Triangle, Virginia 22172, within this judicial district. Bertamini is and was at all relevant times the Vice President of Sales for iCore.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 in that this action arises under the laws of the United States, specifically the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7. The Court has personal jurisdiction over the Defendants. Venue is proper in this District and Division because the Defendants are located and present in this District and Division

and because the conduct giving rise to Cbeyond's complaint has occurred and is occurring, in substantial part, in this District and Division.

## FACTS

8. Seaverns was a Sales Engineer for Cbeyond from April 25, 2005 until July 1, 2009, when his employment was terminated as described below. As such, he was assigned to, and integrally involved in, any customer sales meeting that required technical expertise, including multi-location prospects and customer sales meetings involving phone systems. Seaverns' duties and responsibilities required him to be involved in many aspects of the sales process, including developing and proposing solutions for Cbeyond's existing and prospective customers. In fact, just in the last month of his employment with Cbeyond, Seaverns had access to and was integrally involved with as many as 23 customer sales meetings for existing and prospective customers of Cbeyond.

9. As an employee of Cbeyond, Seaverns owed to Cbeyond a fiduciary duty and a duty of good faith and loyalty. Seaverns was obligated during his employment with Cbeyond to expend his full energy and best efforts in furtherance of the business of Cbeyond.

10. Seaverns was a trusted employee of Cbeyond in whom Cbeyond reposed a great deal of trust and confidence, including but not limited to entrusting Seaverns with pending customer leads and other valuable confidential and proprietary business information. Cbeyond entrusted Seaverns with its confidential and proprietary information including its customer lists, prospective customer lists, customer contact information, details regarding the particularized business needs of its customers, responses to requests for proposals prepared for customers and potential customers, proposed contracts and contractual terms and pricing information. This

confidential and proprietary information was entrusted to Seaverns to enable him to perform his job.

11. Cbeyond creates and maintains proprietary customer information in order to successfully compete with competitors that also provide managed telephony services, through VoIP systems, to small and mid-sized businesses. Cbeyond expends substantial resources to compile and maintain detailed customer information to allow its sales force to make sales and maintain their customer relationships. Cbeyond keeps information regarding its customers and potential customers confidential. Disclosure of this information to Cbeyond's competitors would damage Cbeyond because it would allow its competitors, such as iCore, to target Cbeyond's customers and potential customers and solicit business away from Cbeyond by using Cbeyond's confidential and proprietary information.

12. Cbeyond's employees, including Seaverns, know, have been expressly informed and have expressly covenanted and agreed that they are required to maintain the confidentiality of Cbeyond's customer information.

13. Cbeyond has expended over ten (10) years developing its confidential and proprietary information.

14. Cbeyond maintains documents, customer information, competitive pricing information, and other information on its computer network, which are confidential and proprietary and which constitute valuable assets of Cbeyond. As a Sales Engineer, Seaverns had access to Cbeyond's internal computer network and database.

15. Seaverns was aware that confidential and proprietary information regarding customers and potential customers of Cbeyond would have value to a competitor such as iCore.

16. Throughout Seaverns' employment, Cbeyond took reasonable steps to maintain the secrecy of its confidential and proprietary information, including, without limitation, information regarding Cbeyond's customers and potential customers and the information contained on Cbeyond's computer network.

17. On or about June 23, 2005, and again on or about January 31, 2006, Seaverns signed a "Receipt & Acknowledgement of Cbeyond Communications Employment Guide" (the "Confidentiality Agreement"). In the Confidentiality Agreement, Seaverns specifically agreed that certain information made available to him by Cbeyond, including, without limitation, customer lists, pricing policies and other related information, was confidential information belonging to Cbeyond. Seaverns specifically agreed that such confidential information would not be disclosed to third parties or used for purposes other than the advancement of Cbeyond's business interests. Seaverns also specifically agreed that in the event his employment was terminated, either voluntarily or involuntarily, he would neither utilize nor exploit Cbeyond's confidential information for his own benefit or the benefit of any other individual or company. A true and correct copy of the Confidentiality Agreement is attached hereto as Exhibit "A" and incorporated herein by reference.

18. On or about July 1, 2009, Seaverns submitted his resignation to Cbeyond and gave notice that he was leaving Cbeyond's employ. Seaverns did not indicate whether he had accepted a position with another company. At the time Seaverns tendered his resignation, he intended to become an employee of iCore.

19. On or about July 1, 2009, Cbeyond discovered a series of email communications that Seaverns had sent and received from his Cbeyond email account to iCore's Vice President of Sales, Defendant Bertamini, at mbertamini@icore.com. In these communications, Seaverns

supplied Bertamini and iCore with Cbeyond's confidential and proprietary information about Cbeyond's existing and prospective customers. Specifically, in a series of emails, all of which are dated during the time while Seaverns was still an employee of Cbeyond, Seaverns provided confidential and proprietary customer information to Bertamini in the form of customer identities, specific customer contact information and details regarding the particular needs of certain customers. Seaverns even went so far as to tell Bertamini that a particular customer was a "good fit" for iCore, that the customer "is shopping" for a particular solution and that iCore should "put ur [sic] best guy on it." Seaverns also told Bertamini the following: "Have 2 top reps and a SAM ready to go," presumably meaning that Seaverns was soliciting other employees of Cbeyond to defect to iCore.

20. In this same chain of emails, Seaverns told Bertamini that "they r [sic] shopping," referring to the customers and potential customers of Cbeyond that Seaverns had identified for iCore. In fact, one of the customers identified by Seaverns had already signed a contract with Cbeyond, and Seaverns was on the sales call for this customer. Moreover, Cbeyond representatives were actively soliciting the other prospective customers identified by Seaverns for iCore.

21. Bertamini and iCore actively solicited, enticed and invited Seaverns to supply iCore with confidential and proprietary information regarding Cbeyond's customers and potential customers. In one email, Bertamini told Seaverns "you around tonight. Let's hammer out the details."

22. Upon discovery of the improper communications between Seaverns and iCore, Cbeyond immediately terminated Seaverns' access to the Cbeyond computer and email system. When Seaverns arrived at Cbeyond's Washington DC office to inquire about his inability to

access his Cbeyond email account, Seaverns was barred from Cbeyond's premises and informed that his employment with Cbeyond was terminated effective immediately.

23. After Cbeyond terminated Seaverns' employment, Seaverns immediately commenced employment with iCore.

24. By letter dated July 2, 2009 to Steve Canton, Chief Executive Officer of iCore, and delivered by email to Mr. Canton at scanton@icore.com, Cbeyond requested iCore's cooperation in investigating this misconduct and in mitigating the harm caused by iCore's misappropriation of Cbeyond's confidential and trade secret information. Specifically, Cbeyond asked iCore to take steps to ensure that its employees did not use the misappropriated information and that iCore preserve any evidence related to these events. A true and correct copy of the July 2, 2009 letter is attached hereto as Exhibit "B" and incorporated herein by reference.

25. The email forwarding Cbeyond's July 2, 2009 letter was opened within minutes of its delivery to Canton on July 2, 2009. Nonetheless, Cbeyond received no response from Canton until July 9, 2009 and only after another email from Cbeyond's outside counsel. In a telephone conversation with Cbeyond's outside counsel, Canton expressed no interest in addressing the misconduct of Bertamini and iCore. In fact, Canton started the conversation by stating that he did not know what the problem was and conveyed a completely cavalier attitude about iCore's misconduct. Canton further inquired about the identity of Seaverns, despite Canton's knowledge at that time that Seaverns was an employee of iCore. Canton's "sue me" attitude left Cbeyond with no choice but to pursue legal action. Cbeyond's counsel confirmed the salient points of this conversation by letter dated July 9, 2009, a true and correct copy of which is attached hereto as Exhibit "C" and incorporated herein by reference.

26. There was no legitimate business reason for Seaverns to have accessed and appropriated Cbeyond's confidential and proprietary information as set forth above for iCore's benefit.

27. Upon information and belief, iCore is contacting Cbeyond's customers using Cbeyond's confidential and proprietary customer information.

28. Upon information and belief, iCore is systematically targeting Cbeyond's sales force and customer base using Cbeyond's confidential and proprietary information.

## COUNT I

### VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
### 18 U.S.C. § 1030
(Against Seaverns)

29. Cbeyond hereby incorporates the allegations of paragraphs 1 through 28 as if fully set forth herein.

30. During his employment with Cbeyond, Seaverns knowingly and with an intent to defraud, exceeded his authorized access to Cbeyond's protected computer system by accessing and obtaining Cbeyond's confidential and proprietary information for the purpose of misappropriating said information and providing it to Bertamini and iCore, Cbeyond's direct competitor.

31. As a direct and proximate result of Seaverns' conduct, Cbeyond has suffered a loss of at least $5,000 in value. Cbeyond is entitled to recover from Seaverns the full amount of its loss once it has been determined.

## COUNT II

## MISAPPROPRIATION OF TRADE SECRETS
### (Against all Defendants)

32. Cbeyond hereby incorporates the allegations of paragraphs 1 through 31 as if fully set forth herein.

33. Information regarding Cbeyond's customers and potential customers derives economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and such information has been the subject of reasonable efforts to maintain its secrecy. Information regarding Cbeyond's customers and potential customers constitutes a trade secret under Virginia law.

34. Seaverns was given access to Cbeyond's trade secrets under circumstances giving rise to a duty to maintain their secrecy and to limit their use. Such trade secrets at all times were the property of Cbeyond and remained the property of Cbeyond after Seaverns' employment with Cbeyond ended.

35. The conduct of Defendants, acting in conspiracy with each other, constitutes misappropriation of Cbeyond's trade secrets, pursuant to Va. Code § 59.1-336, *et seq.* and damaged Cbeyond. Furthermore, Seaverns and Bertamini misappropriated Cbeyond's trade secrets as agents of iCore, and therefore, iCore is liable for the acts of Seaverns and Bertamini.

36. Cbeyond is entitled to recover its damages incurred as a result of Defendants' misappropriation of Defendants' trade secrets in amount not yet determined.

37. Defendants' misappropriation of Cbeyond's trade secrets was willful and malicious and has caused, or is in imminent danger of causing, irreparable injury to Cbeyond, for

which there is no adequate remedy at law. In addition, the willful and malicious misappropriation entitles Cbeyond to an award of reasonable attorneys' fees against Defendants pursuant to Va. Code § 59.1-338.1 and punitive damages against Defendants pursuant to Va. Code § 59.1-338.

38. Cbeyond is entitled to injunctive relief including, but not limited to, an order: (a) prohibiting Defendants from making any use or disclosure of Cbeyond's customer information and any other trade secret information of Cbeyond of which they may be in possession; (b) requiring the return to Cbeyond of all Cbeyond trade secret information, in whatever form, and all copies and derivatives of same; (c) if trade secret information is or was contained on a computer disk, hard drive, zip drive, or other electronic storage means, requiring said disk, hard drive, zip drive, or other electronic storage means either to be delivered to Cbeyond, destroyed or modified so that all trade secret information contained therein is permanently deleted or is otherwise rendered permanently inaccessible; (d) prohibiting Defendants from soliciting any customers or potential customers of Cbeyond identified in any data or information misappropriated from Cbeyond; and (e) requiring Defendants to provide evidence that conclusively establishes that they have complied with the terms set forth in items (a) through (d) above.

## COUNT III

### BREACH OF CONTRACT
### (Against Seaverns)

39. Cbeyond hereby incorporates the allegations of paragraphs 1 through 38 as if fully set forth herein.

40. On or about June 23, 2005, and again on or about January 31, 2006, Seaverns signed the Confidentiality Agreement, which is attached hereto as Exhibit "A."

41. In the Confidentiality Agreement, Seaverns specifically agreed that certain information made available to him by Cbeyond, including, without limitation, customer lists, pricing policies and other related information, was confidential information belonging to Cbeyond.

42. Seaverns specifically agreed that such confidential information would not be provided to third parties or used for purposes other than the advancement of Cbeyond's business interests.

43. Seaverns also specifically agreed that in the event his employment was terminated, either voluntarily or involuntarily, he would neither utilize nor exploit the confidential information for his own benefit or the benefit of any other individual or company.

44. The Confidentiality Agreement, which included therein Seaverns' agreement to maintain the confidentiality of Cbeyond's confidential information, including Cbeyond's customer information, was a legally enforceable obligation.

45. Seaverns breached the Confidentiality Agreement as well as his common law and implied duties of good faith and loyalty under his employment relationship with Cbeyond by misappropriating and providing Cbeyond's confidential customer information to iCore and Bertamini.

46. As a result of Seaverns' breach of the Confidentiality Agreement, Cbeyond has suffered damages in an amount not yet determined, for which Cbeyond is entitled to recovery.

## COUNT IV

### TORTIOUS INTERFERENCE WITH CONTRACT
(Against iCore and Bertamini)

47. Cbeyond hereby incorporates the allegations of paragraphs 1 through 46 as if fully set forth herein.

48. The Confidentiality Agreement is a valid contractual relationship between Cbeyond and Seaverns as was his implied and common law duty not to disclose or misappropriate customer leads, trade secrets, or confidential business information of Cbeyond.

49. On information and belief, iCore and Bertamini had knowledge of the Confidentiality Agreement.

50. iCore and Bertamini intentionally interfered with Seaverns' obligations to Cbeyond under the Confidentiality Agreement thereby causing him to breach his obligations to Cbeyond.

51. iCore and Bertamini also intentionally interfered with Seaverns' implied and common law duties of loyalty, non-disclosure and good faith to Cbeyond.

52. As a result of iCore's and Bertamini's tortious interference, Cbeyond has suffered damages in an amount not yet determined, for which Cbeyond is entitled to recovery.

### COUNT V

### TORTIOUS BREACH OF FIDUCIARY DUTY
(Against all Defendants)

53. Cbeyond hereby incorporates the allegations of paragraphs 1 through 52 as if fully set forth herein.

54. As a result of his position at Cbeyond, and the trust and confidence that Cbeyond reposed in him, Seaverns owed and continues to owe Cbeyond a fiduciary duty.

55. By engaging in the acts described above, Seaverns willfully and maliciously breached his fiduciary duties to and damaged Cbeyond.

56. iCore and Bertamini conspired and participated with Seaverns in his breaches of his fiduciary duty and are therefore liable for the same. Furthermore, Seaverns breached his

fiduciary duty to Cbeyond in pursuit of his duties as an agent and employee of iCore, and, therefore, iCore is liable for the acts of Seaverns.

57. Seaverns' breaches of fiduciary duty and iCore's and Bertamini's conspiracy and participation in such breaches, have caused, or are in imminent danger of causing, irreparable injury to Cbeyond, for which there is no adequate remedy at law.

58. Seaverns' breaches of his fiduciary duty have caused Cbeyond to suffer damages in an amount not yet determined, for which Cbeyond is entitled to recovery.

## COUNT VI

### UNJUST ENRICHMENT
(Against iCore)

59. Cbeyond hereby incorporates the allegations of paragraphs 1 through 58 as if fully set forth herein.

60. By utilizing Cbeyond's customer information in its competing business, Defendant iCore has been unjustly enriched and Cbeyond has suffered damages. Cbeyond is entitled to damages in an amount sufficient to disgorge the unjust enrichment Defendant iCore received.

## COUNT VII

### CONVERSION
(Against all Defendants)

61. Cbeyond hereby incorporates the allegations of paragraphs 1 through 60 as if fully set forth herein.

62. By misappropriating Cbeyond's confidential and proprietary customer information, Defendants are and have been tortiously converting same.

63. Defendants are and have been intentionally and maliciously conducting themselves in a manner inconsistent with Cbeyond's rights to its confidential customer information.

64. Defendants are tortiously converting Cbeyond's property willfully and maliciously, and for the purpose of injuring Cbeyond.

65. If Defendants' tortious conversion is not immediately stopped by an injunction from this Court, then Cbeyond will suffer immediate and irreparable harm to its reputation and customer relationships for which it has no adequate remedy at law.

66. Defendants' conversion has caused Cbeyond to suffer damages in an amount not yet determined, for which Cbeyond is entitled to recovery.

## COUNT VIII

### TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE CUSTOMER CONTRACTS AND RELATIONSHIPS
(Against all Defendants)

67. Cbeyond hereby incorporates the allegations of paragraphs 1 through 66 as if fully set forth herein.

68. Cbeyond has contracts and/or relationships with existing customers. In addition, Cbeyond has prospective relationships with potential customers with which it expects to enter into contractual relationships.

69. Defendants are fully aware of, know about, and have been informed of, Cbeyond's existing and prospective relationships and contracts with Cbeyond's customers.

70. Defendants have maliciously and intentionally interfered with Cbeyond's existing and prospective contracts and relationships through the misappropriation and use of Cbeyond's confidential customer information and trade secrets.

71. The methods of Defendants' interference are improper, and they are independently wrongful and tortious, including but not limited to conversion.

72. Defendants are tortiously interfering with Cbeyond's property willfully and maliciously, and for the purpose of injuring Cbeyond and its reputation.

73. If Defendants' tortious interference is not immediately enjoined and stopped by an injunction from this Court, then Cbeyond will suffer immediate and irreparable harm to its reputation and customer relationships for which it has no adequate remedy at law.

74. Defendants' tortious interference has caused Cbeyond to suffer damages in an amount not yet determined, for which Cbeyond is entitled to recovery.

## COUNT IX

### COMMON LAW CIVIL CONSPIRACY
### (Against all Defendants)

75. Cbeyond hereby incorporates the allegations of paragraphs 1 through 74 as if fully set forth herein.

76. Defendants combined, agreed and conspired with each other to misappropriate and unlawfully use Cbeyond's confidential customer information and to participate in Seaverns' breaches of his contractual and fiduciary duties to Cbeyond.

77. Defendants conspired to misappropriate and unlawfully use Cbeyond's confidential customer information and to participate in Seaverns' breaches of his contractual and fiduciary duties to Cbeyond, with reckless disregard for Cbeyond's rights, and with the intention of injuring Cbeyond financially and in its business.

78. As a result of Defendants' tortious conspiracy, Cbeyond is entitled to recover from Defendants actual damages in an amount to be determined, plus punitive damages, plus

attorneys' fees and litigation costs and expenses due to Defendants' willful, intentional and malicious civil conspiracy.

## COUNT X

### STATUTORY BUSINESS CONSPIRACY
(Against all Defendants)

79. Cbeyond hereby incorporates the allegations of paragraphs 1 through 78 as if fully set forth herein.

80. Upon information and belief, with the willful and malicious intention of injuring Cbeyond in its business, iCore, Seaverns and Bertamini willfully and maliciously agreed and conspired amongst themselves to misappropriate and unlawfully use Cbeyond's confidential customer information and to participate in Seaverns' breaches of his contractual and fiduciary duties to Cbeyond in violation of Va. Code §18.2-499 *et seq.*

81. The damage caused by the combined acts of the Defendants was committed in pursuance of the formed conspiracy.

82. As a result of the conspiracy described herein, Cbeyond is entitled to an award of damages in an amount equal to three times Cbeyond's actual damages based on the amount of revenue earned by Defendants as a result of the conspiracy together with prejudgment and post-judgment interest thereon, treble damages in amount of to be determined and reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE,** Cbeyond prays that this Court:

(a) Issue a preliminary and permanent injunction against Defendants enjoining their misappropriation, disclosure and use of Cbeyond's trade secrets and confidential customer information;

(b) Award Cbeyond and against Defendants, jointly and severally, actual damages in an amount to be determined at trial;

(c) Award Cbeyond and against Defendants, jointly and severally, reasonable attorneys' fees, expenses of litigation and all costs of this action;

(d) Award Cbeyond and against Defendants, jointly and severally, treble damages;

(e) Award Cbeyond and against Defendants, jointly and severally, punitive damages in an amount of not less than $1,000,000.00; and

(f) Grant Cbeyond such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Cbeyond demands a jury trial on all issues so triable.

Respectfully submitted this 10th day of July, 2009.

Cbeyond Communications, LLC

By Counsel

_/s/ Michael C. Whitticar_
Michael C. Whitticar (VSB# 32968)
DUNLAP, GRUBB & WEAVER, PLLC
199 Liberty Street, SW
Leesburg, Virginia 20175
703-777-7319
703-777-3656 (fax)
mwhitticar@dglegal.com

OF COUNSEL:
Michael S. French
Georgia Bar No. 276680
mfrench@wargofrench.com
Julie C. Jared
Georgia Bar No. 801699
jjared@wargofrench.com
WARGO & FRENCH LLP
1170 Peachtree Street, N.E.
Suite 2020
Atlanta, Georgia 30309
(404) 853-1500
(404) 853-1501 (facsimile)

*Counsel for Plaintiff
Cbeyond Communications, LLC*